GARLINGHOUSE *v.* MICHIGAN CENTRAL RAILROAD CO.

1. MASTER AND SERVANT—RAILROADS—NEGLIGENCE.

Plaintiff as car repairer in defendant's service was injured while making repairs on cars on defendant's tracks and brought suit claiming that, on the occasion in question, he had objected to doing the particular work because it was dangerous, and the foreman had assured him he would be taken care of, that he relied on the assurance of the foreman, understanding that a man would be sent to act as a lookout and to warn him of the approach of any engine. His testimony showed that he knew the place was dangerous, that no one was in fact sent to protect him. A rule of defendant required car repairers not to work between cars where injury might occur without displaying a blue flag by day or blue lights by night. He violated the rule but claimed it had not been explained to him although his signature was exhibited upon a statement that it had been read and explained to him and a copy left in his possession; plaintiff denied that he read it or received a copy. Defendant presented a request to charge, which was given, covering the facts as presented in plaintiff's testimony and charging that if plaintiff was willing to assume the risk, knowing of the foreman's failure to furnish the promised protection, he could not recover. The court modified the effect of this instruction by further stating that if the jury found the facts as claimed by plaintiff, and that he relied on the assurance of the foreman, the doctrine of assumed risk would not apply and plaintiff could recover if he was free from negligence unless the danger was obvious and a prudent man would not have incurred it under the same circumstances. *Held*, that the modification was contradictory of defendant's request which stated the correct theory applicable to the case.[1]

2. SAME—FELLOW-SERVANTS—TRIAL—DIRECTED VERDICT.

The court erroneously refused a request of defendant that the foreman was a fellow-servant of plaintiff where he had supervision of car repairers with power to discharge them, sometimes worked with them and his duties were of a delegable character.[2]

---

[1] *Volenti non fit injuria* as a defense, see note in 48 L. R. A. 542.

[2] Vice principalship considered with reference to the rank of the superior servant, see note in 51 L. R. A. 513.

Vice principalship as determined with reference to character of act causing injury, see note in 54 L. R. A. 37.

3. SAME—VIOLATION OF RULES.
> Since there was no evidence on plaintiff's part that defendant's officers having the management or the making of rules, knew that the rule had been habitually violated, the trial court erred in leaving to the jury the question whether defendant had enforced the rule governing the display of a blue flag.

Error to Washtenaw; Kinne, J. Submitted April 15, 1912. (Docket No. 151.) Decided March 20, 1913.

Case by Frank W. Garlinghouse against the Michigan Central Railroad Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*J. F. Lawrence* (*T. D. Kearney*, of counsel), for appellant.

*A. J. Sawyer & Son* and *Arthur Brown* (*E. R. Sunderland*, of counsel), for appellee.

McALVAY, J. Plaintiff brought suit against defendant to recover damages for injuries received while he was in the employ of defendant in its railroad yards at Jackson as a car repairer, resulting in the loss of his right hand. Such injuries were claimed to have been caused by the negligence of defendant. A trial resulted in a verdict in favor of plaintiff of $10,319.89, upon which judgment was rendered. The excess of this judgment over $10,000, stated in the *ad damnum* clause of the declaration, was remitted by plaintiff. Defendant has brought the case to this court for review upon writ of error.

Before considering the errors assigned and relied upon by the appellant, a brief statement of the material facts in the case is required for a proper understanding of the questions discussed.

Plaintiff, at the time he was injured, on October 25, 1907, was 31 years of age. He had attended the ward schools in Ann Arbor for about eight years, and one year in the high school. After leaving school, he worked for the Michigan Milling Company for four years. His first

work about defendant's business was voluntary work done in the repair sheds at Detroit for a few days for the purpose of learning how to do repair work, during which time he watched and assisted in making repairs upon cars. From there he went to Ann Arbor and was employed by defendant from October, 1901, to October, 1903, as a car repairer and car inspector. He then worked at the University of Michigan for three years, doing pipe fitting and plumbing, and later worked for a cement block company in Jackson. His next work for defendant followed an application he made early in October, 1907, to Mr. Downs, car foreman at Jackson, Mich., in which he stated that from his experience he considered himself competent to act as a car inspector. He was employed by Downs as a car repairer until a place as car inspector would be open for him. His signature to a special notice to foremen and car repairers, given below, fixes the date as October 4, 1907. He entered upon such employment and so continued until the date of his injury, which occurred October 25, 1907; such work being carried on upon what is called in the record "the repair tracks." On the day last mentioned, a string of 25 or 30 cars was standing on one of the tracks in the yard of defendant. Plaintiff was requested by Downs, car foreman, to look the cars over and see if any of them had broken safety devices.

Plaintiff claims that he objected to doing this work upon the tracks in the yard because it was dangerous, as he had often seen 25 or 30 engines working in the yards switching cars from one track to another; that trains were made up there, and flying switches were made with cars; he further claims that the car foreman told him that he would see that he was taken care of; that he relied upon his statement that he would be protected; that he understood that this protection meant that the car foreman would send a man or men with him to stand alongside the cars and notify him of the approach of an engine with cars

which would put him in danger by moving the cars where he was working. He testifies that he went to the cars as ordered; that no one went with him, and he saw no one at or near the cars to protect him; that he proceeded to inspect these cars and found on one of them a broken knuckle lock; that he then went back on the tracks and found a lock with which to replace the one broken; that he went in between the two cars, which were about eight or ten inches apart, and, while at work fixing the knuckle lock, an engineer backed some cars down the track upon which he was working and bumped into the car and injured him. According to plaintiff's testimony, Mr. Downs, the car foreman, had charge of the car repairers, and had authority to hire and discharge men.

At the time of his hiring, plaintiff signed, at the request of the car foreman, the following special notice:

"To Foremen and Car Repairers: Car repairers and other employés of this department, who have occasion to work on (or) about cars, are strictly forbidden to commence work on any car, the nature of which might require them to place themselves in a position on, under or about the car, whereby its movement on the track could result in injury to them, without first properly protecting said car with a blue flag or flags by day, or blue lights at night. Any employé disobeying the above order will be liable to instant discharge. Foremen are instructed to rigidly enforce the above order, and to keep a supply of blue flags and lanterns for that purpose constantly on hand. Foremen are also instructed to provide each of their car repairmen with a copy of this notice, to fully explain it to them and to procure their acknowledgment thereof on this blank.

"D. R. MACBAIN,
"Acting Sup't Motive Power.

"The above notice has this day been read and explained to me by J. T. Downs and a copy of it left in my possession. I agree to observe carefully the instructions contained therein. Signed at Jackson this 4th day of Oct. 1907.

"FRANK W. GARLINGHOUSE."

Plaintiff admits that he signed this notice, but denies

that a copy was given to him, or that it was explained or read to him, or ever read by him. There is evidence in the case which sharply contradicts plaintiff upon this proposition, and also upon his claim that the car foreman promised to protect him when he went to work on these cars.

The first contention of appellant is upon the question of the assumption of risk and contributory negligence on the part of plaintiff, under which are grouped several assignments of error. It is claimed by defendant that plaintiff was an intelligent and experienced man, and to a certain degree acquainted with work of the kind to which he was assigned on the day of his injury, although it is not claimed, nor does the record show, that he had before worked in yards as extensive as those of defendant at Jackson. Defendant contends that, from plaintiff's own testimony, he thought, when directed to do this work, that this was a dangerous place, knew that there were numerous engines handling cars in the yard, and knew that nobody went with him or was present at the track, upon which these cars stood, to protect him from injury which might arise if the cars were disturbed while he was at work. Therefore, under such circumstances, he assumed the risk and was guilty of contributory negligence.

It is insisted that the circuit judge erred in coupling with a request of defendant, which he gave, other instructions which were contradictory of such request and erroneous. The request was as follows:

" The plaintiff has sworn that Mr. Downs, the car foreman, agreed to protect him in his work in the yards. He also swore that the protection which should have been furnished him was to have had a man near by him to have notified him of the approach of any cars from either west or east. The plaintiff's testimony shows that no such man was present, and he knew it, and, even though Mr. Downs had promised the protection that plaintiff claims, nevertheless, if the plaintiff was willing to assume, and did assume, the risk, knowing that the protec-

tion was not furnished, he was guilty of negligence and cannot recover."

Following this the court stated at length the claims of plaintiff according to a request claimed to have been presented by plaintiff, and continued by giving the portion of the charge claimed to be contradictory to the defendant's request already given, as follows:

" It is the further claim of the plaintiff that his case does not come within the purview of the doctrine of the assumption of risks, but that he had a right to rely for a reasonable time, and to a reasonable extent, upon the statement of Mr. Downs that he would take care of him, or that he would be taken care of, and that it was just as safe to do the work where directed as upon the repair track. And in this connection, with regard to this claim of the plaintiff, I instruct you that, if you find from the evidence in this case that the facts are as claimed by the plaintiff, then the doctrine of assumption of risks does not apply, and the defendant will not be excused from responding to the plaintiff for the damages that he has sustained upon the ground that the plaintiff assumed the risks of his employment, provided you find that plaintiff was not guilty of contributory negligence, and that he was otherwise free from fault on his part, or unless you find from the evidence that the danger was so obvious and apparent that a man of plaintiff's experience ought to know of it and refuse to put himself in the position that he was in when hurt."

This request of defendant was based upon the testimony of plaintiff from the facts claimed by him to exist at that time. The portion of the charge last quoted is contradictory to the request of defendant already given. It was error to give this portion of the charge objected to.

Error is assigned upon the refusal of the court to give the following request to charge:

"Under the testimony in the case, J. T. Downs, the car foreman at Jackson, was a subordinate and was serving the same master and working under the same control and deriving his authority and compensation from the same common source as the plaintiff, and though his

grade and the grade of the plaintiff might be slightly different, nevertheless the plaintiff and Mr. Downs were fellow-servants, and the plaintiff cannot recover."

The record shows that Downs was a car foreman, having control of the car repairers, and, according to plaintiff's testimony, hired and discharged men, which we may assume to have been the fact, as it is not contradicted. It would appear that he had the supervision and charge of car repairers upon the yard tracks as well as on the repair tracks, and that he sometimes worked with them. His duties, as far as shown by the record, were delegable duties of a limited character. He is one of the class mentioned in the notice to foremen and car repairers, above given, being an employé of the company under the superintendent of motive power, car department, of the defendant company. Under previous decisions of this court, plaintiff and Downs were fellow-servants; and taking the testimony of plaintiff as true, relative to the neglect of Downs to keep the promise given to him to protect him while at work, such negligence would be the negligence of a fellow-servant. *McCauley* v. *Railroad Co.*, 167 Mich. 230, 236 (132 N. W. 510), and cases cited. The court erred in refusing to give this request of the defendant.

There was evidence in the case on the part of plaintiff tending to show that the rule given in the "notice to foremen and car repairers," relative to protecting the car with a blue flag by day and a blue light by night, had not been complied with to a considerable extent by the workmen; and the court charged the jury that, in case the defendant had not enforced the rule in relation to placing flags for the protection of workmen, plaintiff would be entitled to recover. Upon this charge, error has been assigned. There is no evidence that the defendant's officers, who manage or make the rules, knew or ever heard of the violation of this rule. The evidence in the case did not warrant the instruction given. *Jones* v. *Railroad Co.*, 168 Mich. 1, 9–14 (133 N. W. 993). By

reason of our conclusions already given, it is not necessary to discuss the further questions presented.

The judgment of the circuit court is reversed, and a new trial ordered.

STEERE, C. J., and MOORE, BROOKE, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.